UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA, | |
|---|---|
| -v- | 18 Cr. 834 (PAE) |
| KINTEA MCKENZIE, | ORDER |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

On March 27, 2020, defendant Kintea McKenzie, through counsel, submitted a letter seeking temporary release from the Metropolitan Correctional Center ("MCC"), where he has been held since June 17, 2019, pending his sentencing, which is scheduled for June 24, 2020. Dkt. 441 ("Def. Ltr."). The letter noted that the MCC has designated McKenzie as "high-risk," because he suffers from asthma, and has issued him an albuterol inhaler, and that this condition makes McKenzie more susceptible to getting sick, or dying, from COVID-19. The letter emphasized the importance to McKenzie's health, during the current public health crisis, of maintaining "the social distancing necessary to prevent the spread of the virus," and argued that this imperative could not be achieved in the "close quarters" of a crowded municipal prison. *Id.* at 2; *see also id*. at 3 (quoting former Rikers Island medical director that "[m]itigating efforts such as physical distancing and frequent handwashing are impossible in jails") (citation omitted). The letter concluded:

> But who can say that Kintea McKenzie could weather a bout of COVID-19? The news makes clear that New York hospitals are overwhelmed with people who are seriously ill and that there are not enough ventilators for those who desperately need them. Mr. McKenzie voluntarily surrendered when he was indicted and did so again when it was time for him to go in after his plea. He has a proven track record of good conduct while on release. When it is not absolutely necessary to keep Mr.

> McKenzie, who is at greater jeopardy than most in the incubator that is MCC, is it not better to release him with appropriate restrictions than to risk his life? Surely where it is possible to impose sufficient protections for the community, granting him release on bond is the humane decision.

*Id.* at 5.

On March 30, 2020, over the Government's objection, the Court granted McKenzie's application for temporary release during the COVID-19 crisis, pursuant to the same conditions on which he had previously been released. Dkt. 443 ("Release Order"); *see also* Dkt. 444 (amending location monitoring conditions). The Court acted based on 18 U.S.C. § 3145(c), which provides for a limited exception to mandatory detention where, *inter alia*, "exceptional reasons" so justify. Citing recent cases similarly ruling, the Court found the heightened threat posed by COVID-19 to an inmate with a documented respiratory condition in a detention facility with multiple confirmed cases of COVID-19 "present[s] a unique combination of circumstances" that can justify release under § 3145(c). Release Order at 5 (internal quotation marks and citation omitted). McKenzie, the Court found, would be safer from COVID at home than in the MCC:

> The Court appreciates the Government's expression of confidence that the Bureau of Prisons will act vigorously to limit the spread of COVID-19 within the MCC, and appreciates the many steps the BOP has taken or is taking towards this end, as chronicled by the Government. *See* Govt. Ltr. at 4–5. Notwithstanding these efforts, it is self-evident to the Court that Mr. McKenzie is at greater risk of contracting COVID-19 while confined in the MCC than at home on release, *i.e.*, that he will be safer at home than in the MCC. The Government does not contend otherwise.

*Id*. at 6. In releasing McKenzie on conditions, the Court notified him "that it expects scrupulous compliance with all conditions of release, and that a violation of any condition will subject Mr. McKenzie to immediate remand." *Id*.

2

On April 2, 2020, the Pretrial Services Office of this District ("Pretrial Services") furnished the Court with a video it had been sent by the New York Police Department ("NYPD") and which had apparently been posted on a social media account. The video depicts a crowded and loud celebratory party in McKenzie's Brooklyn apartment, apparently taken on April 1, 2020, shortly after McKenzie's release. At least one of the young men at the party appears to be smoking a marijuana cigarette and others are drinking alcohol. The word "Blood" is audible, although the context leaves unclear whether it was intended as a reference to the gang, the Nine Trey Gangsta Bloods, with which McKenzie associated. The video does not reflect any effort by any attendee to achieve social distancing. To the contrary, the young men, including McKenzie, are packed closely together throughout. They are captured in various forms of physical contact, celebration, and embrace. With the exception that one attendee wears a mask, the video does not bespeak any mindfulness by any attendee to the fact that a fatal pandemic is sweeping the city.

Upon receipt of the video, the Court disseminated it to counsel and ordered that counsel and Pretrial Services set out their respective views as to the Court's appropriate response. On Friday, April 3, 2020, the Court received a letter from the Government, setting out its views and those of Pretrial Services, Dkt. 445 ("Govt. Apr. 3 Ltr.") and one from defense counsel, Dkt. 446 ("Def. Apr. 3 Ltr.").

Pretrial Services asked that McKenzie be remanded, for two reasons. First, a condition of McKenzie's release is that he have no contact with any gang member, whereas, according to the NYPD, the video had been posted by a known gang member. Second, McKenzie's demonstrated "failure to adhere to social distancing guidelines" would impair Pretrial Services' ability to safely to affix electronic monitoring equipment to enable enforcement of McKenzie's conditions of release. Govt. Apr. 3 Ltr. at 2.

3

The Government too expressed dismay with McKenzie's conduct. McKenzie, it stated, had used his asthma condition to obtain release during the COVID-19 pandemic, and then engaged in "reckless behavior immediately following his release [which] put himself and others at danger and undermined the primary reason supporting [the] Court's rationale granting his release: to allow the defendant to distance himself from others in an effort to avoid contracting COVID-19." *Id*. The Government, however, did not recommend remand at this time, for two reasons. First, the Government thus far lacked evidence "to confirm that the persons consorting with McKenzie at the party included known gang members." *Id*. at 2 n.1. Second, "[b]y putting himself in such close proximity to others, the defendant may have exposed himself to COVID-19, and remand at this time may present risks to others." *Id*. at 3. The Government instead recommended that the conditions of McKenzie's release be amended, including to restrict the occupancy of the apartment in which he is residing. *Id*. at 3. The Government also urged that, at sentencing, McKenzie be held accountable for his recent actions. *Id*.

Finally, in its brief letter, the defense stated: "The government's letter is correct, Mr. McKenzie's conduct was selfish and reckless. The defense agrees with the government's recommendation of additional restrictions and respectfully requests that the Court impose those conditions rather than directing Mr. McKenzie's return to jail." Def. Apr. 3 Ltr. at 1.

The Court's assessment is as follows.

Were it not for the risk that remanding McKenzie would endanger others' health and safety, the Court would remand him to the MCC forthwith. That is because McKenzie's conduct has put the lie to the rationale for his release: that he would be safer from COVID-19 at home than in the MCC. McKenzie's reckless behavior reflected on the video presents at least as great a risk, if not greater, to him of exposure to COVID-19 than he would face at the MCC. There,

4

BOP officials are at least conscientiously trying—within the limitations presented by a crowded municipal jail—to arrest the spread of the disease. The same cannot be said for McKenzie. And there is no reason to assume that McKenzie's off-camera activities are any more health-minded than those captured in the video.

However, as the Government notes, returning McKenzie to the MCC now would put others in danger. McKenzie's frolic in close proximity to numerous others during his recent taste of liberty alone potentially exposed him to COVID-19. To remand him now would potentially expose United States marshals, BOP officials, fellow MCC inmates, and others in his presence to the virus. These persons, including the other inmates, deserve better.

The Court instead, heeding the Government's recommendation, will amend McKenzie's conditions of release, in three respects, effective immediately. First, no visitors to McKenzie's apartment are to be permitted there while McKenzie is residing there. Only McKenzie and the other family whom the defense represents lives there—McKenzie's two brothers, his mother, and the mother's boyfriend—are permitted to be in the apartment. Second, McKenzie may not leave the apartment for any reason, except on the express written permission of Pretrial Services. Third, McKenzie is prohibited from using any electronic device or social media application except for the purpose of reporting to Pretrial Services or communicating with his counsel. The Court further directs that, on May 6, 2020, Pretrial Services provide an update to the Court on McKenzie's compliance with his conditions of his release and whether his return to the MCC is now safe for others.

The Court further notifies counsel that it regards this episode as relevant to McKenzie's sentence. Under 18 U.S.C. § 3553(a), the factors a Court is to consider at sentencing include the defendant's "history and characteristics." The Court views McKenzie's actions, as shown on the

video, as affording an illuminating window into his character. McKenzie's actions, at once, (1) revealed that, to obtain release, he had misled the Court by feigning genuine concern about contracting COVID-19; (2) disrespected his counsel, who with dedication and sincerity had advocated for his release, unaware that her client, once released, would behave recklessly with respect to contracting the disease; (3) exposed his family and friends to the risk of contracting COVID-19 from him, to the extent that he might already have contracted it at the MCC; and (4) mocked the efforts of other high-risk inmates in the MCC and elsewhere who—without ulterior motives—are today desperately seeking release from jail to reduce their risk of contracting this virulent disease that has killed thousands.

The Court accordingly notifies counsel that, based on this dishonorable conduct, it is considering varying at sentencing above the guidelines range of 46–57 months imprisonment that the parties have agreed is applicable and from which each—before this episode—had agreed not to seek a variance. The Court invites counsel in their sentencing submissions to address these matters, including to provide any factual elaboration on them.[1]

Mr. McKenzie's sentencing remains scheduled for June 24, 2020, a date the parties should treat as firm.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: April 6, 2020
    New York, New York

---

[1] In light of this consequential post-plea development, the Court regards the Government, notwithstanding this aspect of the plea agreement, as at liberty to advocate for an above-guideline sentence.